**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER CALPIN,** | : | **No. 3:23cv1418** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **THE ADT SECURITY SERVICES, INC.,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Before the court is Plaintiff Christopher Calpin's motion to remand this case

to the Lackawanna County Court of Common Pleas on the basis that the notice

of removal is untimely. (Doc. 6).  Having been fully briefed, this matter is ripe for

disposition.[1]

**Background**

This matter arises out of the termination of plaintiff's employment while he

pursued benefits under the Pennsylvania Workers' Compensation Act ("WC

Act"), 77 PA. STAT. § 1, *et seq.* (See Doc. 1-2, Complaint, ¶ 40, ECF p. 24).[2]

Plaintiff initiated this action against Defendant The ADT Security Services, Inc.

("ADT") on September 26, 2022 by writ of summons. (Doc. 1-2, ECF p. 3).  A rule

---

[1] The Honorable Jennifer P. Wilson transferred this matter to the undersigned on November 7, 2023.

[2] Defendant included all state court filings in one separate exhibit to its Notice of Removal. (See Doc. 1-2). Page numbers from the ECF document are included for ease of reference.

to file a complaint issued from the Lackawanna County Clerk of Judicial Records on October 24, 2022. (Id., ECF p. 11).  Plaintiff filed his complaint on October 27, 2022. (Id., ECF p. 15).  Defendant ADT indicates the complaint was served "on or after October 27, 2022[,]" and that defendant filed and served its answer in state court on November 18, 2022 (Doc. 1, Notice of Removal at ¶¶ 2-3).

Specifically, plaintiff's complaint alleges that he worked for defendant and sustained a work-related back injury on or about July 5, 2019. (Id., Complaint, at ¶¶ 3, 5, ECF p. 16-17).  The parties litigated plaintiff's workers' compensation claim for several years, and plaintiff ultimately received benefits for a period of time between July and October 2019 and from October 1, 2020 into the future after a favorable ruling from the workers' compensation judge. (Id. at ¶¶ 7-30, 35, ECF p. 17-21, 23).

Relevant to his claims in this action, plaintiff alleges he sustained a recurrence or aggravation of his work injury on September 27, 2020. (Id. at ¶ 12, ECF p. 18).  Per the complaint, plaintiff "gave notice of his new disability to Defendant ADT and sought reinstatement of benefits beginning October 1, 2020." (Id. at ¶ 14, ECF p. 18). Plaintiff also alleges that he filed a petition to reinstate benefits under the WC Act on November 25, 2020.  (Id. at ¶ 35).[3]

_____

[3] Plaintiff also avers that he filed the petition to reinstate benefits on November 25, 2021. (Doc. 1-2, Complaint, at ¶ 35, ECF at 23).  Reference to the workers' compensation judge's decision

Subsequently, defendant sent plaintiff correspondence dated November 15, 2021 advising him that his employment would be terminated for job abandonment. (Id. at ¶ 32, ECF p. 22).  Defendant then terminated plaintiff effective November 22, 2021 in a letter dated that same day.  (Id. at ¶ 33, ECF, p. 23).

Plaintiff brings claims of wrongful termination and retaliation, alleging defendant violated Pennsylvania law and public policy by firing him for exercising his rights under the WC Act. (Id. at ¶¶ 4, 34, 40, ECF p. 17, 22, 24)(citing Shick v. Shirey, 716 A.2d 1236 (Pa. 1998)).  Plaintiff's complaint seeks an award of compensatory damages and punitive damages. (Id. at ¶ 45, ECF p. 25).

Nearly ten months after the filing of plaintiff's complaint, Defendant ADT removed this matter on August 25, 2023. (Doc. 1).  As discussed below, defendant asserts that removal is timely based on information obtained during discovery regarding the amount in controversy. (Id. at ¶¶ 6-21).  On September 25, 2023, plaintiff filed the instant motion to remand. (Doc. 6). The parties have briefed their respective positions, bringing this case to its present posture.

**Legal Standard**

"In order to provide a neutral forum for what have come to be known as diversity cases, Congress [] has granted district courts original jurisdiction in civil

---

reveals that plaintiff actually filed the petition on November 25, 2020, not 2021. (Doc. 1-2, Answer, Exh. A, ECF p. 42-53).

3

actions between citizens of different States. . ." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005)(citing 28 U.S.C. § 1332).  The statute conferring jurisdiction provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive interests and costs, and is between . . . citizens of different States[.]" 28 U.S.C. §1332(a)(1).

Moreover, "[a]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

Removal of state court actions to federal court and remand of actions back to state court are governed by a series of statutes, 28 U.S.C §§ 1441-1455. Following Third Circuit law, the court strictly construes these statutes against removal and resolves all doubts in favor of remand. See Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987).  "A party asserting federal jurisdiction in a removal case bears the burden of showing 'that the case is properly before the federal court.' " Judon v. Travelers Prop. Cas. Co. of Am., 773 F.3d 495, 500 (3d Cir. 2014)(quoting Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007)(further citation omitted).

4

**Analysis**

As noted above, before the court for disposition is plaintiff's motion to remand. Plaintiff does not contest that the court would have jurisdiction under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000. Rather, plaintiff argues that the defendant removed this matter in an untimely manner and the case should be remanded.

To remove a matter from state court, a defendant must file a signed notice of removal in the federal district court for the district and division within which such state court action is pending "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a).

Generally, the notice of removal must be filed within thirty (30) days after service of the initial pleading setting forth the claim for relief upon which such action is based. 28 U.S.C. § 1446(b)(1). There is no dispute that defendant filed its notice of removal after this thirty-day period.

A defendant may file a notice of removal more than thirty (30) days after receipt of the initial pleading under certain circumstances. These statutory rules establish that:

> Except as provided in [Section 1446(c)], if the case stated
> by the initial pleading is not removable, a notice of removal

5

> may be filed within 30 days after receipt by the defendant,
> through service or otherwise, of a copy of an amended
> pleading, motion, order or other paper from which it may
> first be ascertained that the case is one which is or has
> become removable.

28 U.S.C. § 1446(b)(3).

Here, diversity of citizenship between the parties was obvious at the beginning. Defendant, however, asserts that it did not ascertain that the amount in controversy exceeded $75,000 until much later from "other paper," i.e. plaintiff's answers to interrogatories. Regarding discovery responses as "other paper," Section 1446(c)(3) provides:

> If the case stated by the initial pleading is not
> removable solely because the amount in controversy
> does not exceed [the sum or value of $75,000 under 28
> U.S.C.] 1332(a), information relating to the amount in
> controversy in the record of the State proceeding, or in
> responses to discovery, shall be treated as an "other
> paper" under [Section 1446(b)(3)].

28 U.S.C. § 1446(c)(3)(A).

These technical explanations aside, if a plaintiff believes removal is defective, "on the basis of any defect other than lack of subject matter jurisdiction[,]" they are entitled by statute to file a motion to remand the case back to the state court. 28 U.S.C. § 1447(c).

Plaintiff contends that the state court complaint placed defendant on notice that the amount in controversy exceeded $75,000 for the purposes of diversity

jurisdiction.  After careful review, the court agrees with plaintiff that remand is warranted here.

As noted above, a case becomes removable after the thirty-day period "if the case stated by the initial pleading is not removeable." See 28 U.S.C. § 1446(b)(3).  Thus, this matter turns on whether the case stated in plaintiff's complaint made this matter removeable.

Plaintiff initially filed this matter in a Pennsylvania trial court.  Under Pennsylvania's civil rules, "[a]ny pleading demanding relief for unliquidated damages shall not contain a specific sum." PA. R. CIV. P. 1021(b).  Furthermore, because Pennsylvania law also calls for civil matters to be first submitted to a three-member arbitration panel where the amount in controversy does not exceed $50,000, see 42 PA. CONS. STAT. § 7361(a)-(b); PA. R. CIV. P. 1031, Pennsylvania's pleading rules also require a plaintiff to state whether the amount claimed, "does or does not exceed the jurisdictional amount requiring arbitration referral by local rule[,]" PA. R. CIV. P. 1021(c).  The Lackawanna County Court of Common Pleas is a state trial court with compulsory arbitration for all matters that do not exceed a jurisdictional limit of $50,000.  LACKA. CTY. L. R. CIV. P. 1301(a).  As a result, plaintiff's complaint seeks "compensatory damages and punitive damages in an amount **in excess of $50,000**, which is the arbitration limit,

7

exclusive of costs and interest." (Doc. 1-2, *ad damnum* clause, ECF p. 76)(emphasis added).

By nature of state law and rules of civil procedure, a plaintiff filing in a Pennsylvania trial court with compulsory arbitration is unlikely to state in their complaint whether damages exceed $75,000 for the purposes of federal diversity jurisdiction. Rather, such complaints are likely only to state a dollar amount that would or would not subject the claims to compulsory arbitration in Pennsylvania.

For the court's purposes on a motion to remand, however, "[t]he amount in controversy does not need to be stated in the initial pleading to trigger the running of the 30–day period for removal under [2]8 U.S.C. § 1446(b)." McMillan v. Wilkie Trucking Inc., No. CIV.A. 13-7104, 2014 WL 695583, at *2 (E.D. Pa. Feb. 21, 2014)(Surrick, J.); see also Carroll v. United Air Lines, Inc., 7 F. Supp. 2d 516, 521 (D.N.J. 1998)("It is not necessary that the amount in controversy be stated in the initial pleading in order to trigger the running of the thirty-day period for removal."). Furthermore, "the thirty-day period begins to run when a defendant can reasonably and intelligently conclude from the pleadings that the amount in controversy exceeds the jurisdictional minimum." Sims v. PerkinElmer Instruments, LLC, No. CIV.A. 04CV3773, 2005 WL 746884, at *2 (E.D. Pa. Mar. 31, 2005)(Surrick, J.)(quoting Carroll, 7 F. Supp. 2d at 521).

8

"The general federal rule is to decide the amount in controversy from the complaint itself." Angus v. Shiley Inc., 989 F.2d 142, 145 (3d Cir. 1993) (citing Horton v. Liberty Mutual Ins. Co., 367 U.S. 348, 353 (1961)). Moreover, "the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." Id. at 146. Where an *ad damnum* or "wherefore" clause in a complaint states categories of damages, courts must translate these categories into monetary sums. Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 399 (3d Cir. 2004). The inquiry must be objective with realistic estimations of amounts recoverable and not based on fanciful, "pie-in-the-sky," or wishful amounts. Id. at 403.

### a. Plaintiff's Wage Loss and Compensatory Damages Claims

Plaintiff's complaint categorizes his damages from the alleged wrongful termination as "including compensation for wage loss, credit impairment, fringe benefits, medical insurance, emotional distress, increased pain suffered as a consequence of such injury, anxiety, and other damages recoverable by law including punitive damages." (Doc. 1-2 at ¶ 45, ECF p. 76). Thus, plaintiff brings claims for compensatory damages and punitive damages. Since defendant relies on the value of plaintiff's wage loss claim in its notice of removal, the court

9

will discuss plaintiff's wage loss claim and other components of his compensatory damages allegations before turning to punitive damages.

The parties do not dispute that defendant is plaintiff's former employer and that the parties litigated plaintiff's workers' compensation claim.  In its notice of removal, defendant acknowledges awareness of plaintiff's hourly wage.  (Doc. 1 at ¶ 17).  Under defendant's calculations, plaintiff's wage loss claim did not itself exceed the federal jurisdictional limit until well after the thirty-day period set by Section 1446(b)(3) for removal. (See id. at ¶¶ 17-18 (calculating 91 weeks of wage loss from the date of separation to the notice of removal to be $79,534)).  Although aware of plaintiff's hourly pay, defendant further asserts that it did not know whether plaintiff obtained other employment until after receiving plaintiff's answers to interrogatories. (Id.)  As a result, Defendant ADT claims it did not know that his lost wages claim alone exceeded the value $75,000 until receiving these discovery responses. (Id. at ¶¶ 16-18).

Based on plaintiff's complaint detailing the underlying workers' compensation claim, the court is not persuaded by defendant's assertions.  Rather, the averments in the complaint and the notice of removal indicate that Defendant ADT had awareness of the amount of plaintiff's wage loss claims at all relevant times.  In his complaint, plaintiff alleges that he received a favorable ruling from the workers' compensation judge on his petition to reinstate benefits,

which included a finding of total temporary disability from October 1, 2020, into the future. (Doc. 1-2, ¶¶ 15, 23, ECF p. 19-20).  Thus, the amounts regarding plaintiff's ongoing wage loss claim could be readily calculated and valued by defendant at the time of the filing of the complaint because of the underlying workers' compensation claim.[4]

Plaintiff's wage loss claim, however, is only one component of his claim for compensatory damages.  As Defendant ADT indicates in the notice of removal, its approximation of lost wages, "does not include the monetary value of 'severe emotional distress', 'job security', or the value of 'fringe benefits'[,]" which "increase the amount in controversy to well beyond $75,000 in alleged damages." (Doc. 1 at ¶ 19).  The court finds that this statement by defendant had equal truth at the time plaintiff filed the complaint. (See Doc 1-2 at ¶ 45, ECF p. 76 (claiming loss of fringe benefits and medical insurance, emotional distress,

---

[4] The realities of a litigated workers' compensation claim belie defendant's averments in its notice of removal of its unawareness of whether plaintiff returned to the workforce.  Under the WC Act, an employee receiving benefits must report to the employer in writing if he becomes "employed or self-employed in any capacity." 77 PA. STAT. § 631.1(a)(1).

That same statute sets up a mechanism for inquiry into an employee's work status every six (6) months through verification forms. 77 PA. STAT. § 631.1(d), (f); see also 34 PA. CODE §§ 123.501, 123.502(a)(setting forth the use of LIBC-760 forms to verify employment under the WC Act).  A failure to timely respond allows for an employee's benefits to be suspended until the verification forms are returned. 77 PA. STAT. § 631.1(d), (g).  This system also makes it clearly prudent on an employer and/or their insurer to regularly send forms to an employee to verify their employment status because this mechanism can be used to ultimately suspend or modify the payment of workers' compensation benefits due to an employee's return to the workforce.  See 77 PA. STAT. § 774.2, § 774.3.

and increased pain from his work-related injury)).  Like plaintiff's wage loss claim, defendant could reasonably calculate the value of employer-paid medical insurance and any other component of an employee benefit plan at the time of service of the complaint.  And, while not as ascertainable, the personal injury components of plaintiff's claims would only add to the amount in controversy rather than subtract. See Carroll, 7 F. Supp. 2d at 521 (collecting cases where personal injury allegations placed defendants on notice and triggered the thirty-day removal period); Carlini v. Glenn O. Hawbaker, Inc., 219 A.3d 629, 645 (Pa. Super. Ct. 2019)(permitting recovery of emotional distress damages in a workers' compensation-related wrongful termination case).  In light of plaintiff's averments, defendant could reasonably and intelligently conclude from plaintiff's complaint that his claims for compensatory damages alone exceeded the value of $75,000. Defendant had thirty (30) days from the service of the complaint to remove the action.  It did not do so until nearly ten (10) months later.  Defendant thus failed to remove this matter on a timely basis and this matter will be remanded.

### b. Punitive Damages

Plaintiff's complaint also seeks punitive damages. "While the general federal rule is to decide the amount in controversy from the complaint itself, when punitive damages are sought, a court may include them in the amount in controversy unless the demand is 'patently frivolous and without foundation.' "

Winslow v. Progressive Specialty Ins. Co., Inc., No. 3:18-CV-1094, 2018 WL 3546560, at *1 (M.D. Pa. July 24, 2018)(Conaboy, J.)(quoting Golden ex rel. Golden v. Golden, 382 F.3d 348, 355 (3d Cir. 2004), abrogated on other grounds by Marshall v. Marshall, 547 U.S. 293, 311 (2006)); see also Huber v. Taylor, 532 F.3d 237, 244 (3d Cir. 2008)(citing Golden).  As Huber explained:

> Claims for punitive damages are "patently frivolous and without foundation" when, for example, they are not permitted under state substantive law. If appropriately made, however, claims for punitive damages "will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum."

532 F.3d at 244 (quoting Golden, 382 F.3d at 355) (internal citations and emphases removed).

Under Pennsylvania law, punitive damages may be recovered where an employee claims wrongful discharge after being terminated for seeking benefits under the WC Act.  See Carlini, 219 A.3d at 636 (Pa. Super Ct. 2019).

Accordingly, on the basis of plaintiff's punitive damages claims alone, defendant maintained the ability to remove this matter when plaintiff served his state court complaint.  Because defendant did not remove this matter within the thirty-day period afforded by Section 1446(b)(1), plaintiff's motion to remand will be granted on these additional grounds.

**Conclusion**

For the reasons set forth above, defendant's notice of removal is procedurally defective.  Accordingly, the court will remand this case to the Lackawanna County Court of Common Pleas under 28 U.S.C. § 1447(c). An appropriate order follows.

Date: 2/20/24

JUDGE JULIA K. MUNLEY
United States District Court

14